for 06-4439. Ms. Goldstein and Mr. DeLoone, DeLoone, thank you. Good morning your honors. You want to wait till Mr. DeLoone gets settled and gets his briefcase open? That's okay. You need to move the mics down anyway. We have all the time we need. We don't have all the air we need. Can we get some air in here? Yeah. Thank you. I'm sorry. Elizabeth Goldstein for Appellant Ronald Scott who was an inmate at the Department of Corrections in Pennsylvania. I'd like to reserve three minutes for rebuttal. That's fair. This case, what issues, what's left? I think what is definitely without any doubt left is Defendant Sabina who was the superintendent at Somerset was sued in his individual capacity and RUPLA was clearly enacted after that date. That's clear there. There's a question about whether because it's a pro se complaint whether we can infer from the complaint that the defendant Beard at the Department of Corrections was sued individually because it asked for monetary damages. What was the claim against Defendant Sabina? Did it have anything to do with the It's a pro se complaint and you have to read it as a whole. Defendant Sabina denied his second request for hair length exemption when he moved over to Somerset. So where is Sabina named in the complaint and with respect to what? Okay. He is named in the complaint. He's on the list of parties. I just have to find the right page. And what I'm asking for specifically Ms. Goldstein is not to stop you from working but it was pretty clear to me that he was going, I'm sorry, that your client was trying to get individual damages from former Secretary of Corrections Horn. He was dismissed anyway. And so your client knew how to make a direct claim. Where is a claim about hair length policy against Sabina in the complaint? That's by paragraph or something. Okay. Mr. Sabina, first of all, he is referred to as a defendant on paragraph 7. I think pretty much what the request for the hair length exemption, which I'm looking for here. Okay. Paragraph 50. On August 2001, pursuant to prison procedure, the plaintiff filed an appeal to the institutional super defendant, defendant Sabina, pointing out that PDOC policy DC807, which is the one, is contrary to law. And then paragraph 52, which I think that he skipped 51. On or about August 8, 2001, the plaintiff received a copy of his appeal to defendant Sabina, which was time stamped received August 6, 2001. And I think for notice pleading, that's enough to give defendant Sabina notice. That he's being sued on the hair length policy? Yes. I mean, that's what the whole, that's all, that 807, that's all it is, the hair length policy. And certainly the government understood that through the briefs. In your opening appellate brief, who are you making claims against? It sounds like it's Beard and Horn, right? No, Beard, Sabina, and Flowers, I thought. Beard's in there now. I thought Mr. Horn had been dismissed. Where do you see Sabina and Flowers in there? And rather than have you stand here and. Okay, I think I say defendants. I think I just say defendants. I have to look whether I named all of them. You did say defendants at one point, but I'm trying to figure out who is included. Okay, here, let's see. Okay, page three. Defendant Raymond Sabina was superintendent. Defendant Kathy Flowers was lieutenant. And I'm reading on page four now. And then defendant Jeffrey Beard was secretary of the department. See, I don't think I named Mr. Horn because he had been dismissed prior to me getting involved. And he succeeded. Right, right. So I think that Mr. Sabina is clearly sued in his individual capacity. You have to take a more liberal view of the complaint if you want to include Mr. Beard in the individual capacity. And what should I move forward? Or is there anything else I can answer about who defendants are in this case? Who's left? Well, on the first question, does the doctrine of qualified immunity apply here at all? I was, I was, I'm not, I am not sure, but I haven't seen any case law to say that it does not. But in thinking about it, when you look at the RUFLA, the whole idea of it was to provide the most broad protection for religious protection. And if you can't sue anyone because it wasn't clear to them that that you got that protection, it kind of goes against the whole idea of the RUFLA statute. Do you think that RUFLA was intended to overrule qualified immunity law? Because what I hear you arguing is RUFLA really won't work unless qualified immunity doesn't apply. And it strikes me as a remarkable position to take. I'm wondering if you've got any cases for that. No, I don't think that they thought it through. I just think in the practical aspect, when you look at this case, like I said, I haven't seen anyone make that argument either. How are you going to have your RUFLA case if it has to be so clear, yet they're trying to do this expansive broad right? And I don't, I think we still win on the qualified immunity also. I don't concede that. Then that's, why don't you go there? How is it that you still win? How is it that Mr. Sabina should have known? Okay, I think first of all we have to start with the reasonable person. The reasonable person is going to know what our federal law is, okay? So you're going to read RUFLA. And that's going to say that there is this broad right and that the prison can only curtail the right if it's the least restrictive alternative. And in this case, you have to look how the hair policy applied to Mr. Scott. And what it was, was he didn't belong to any specific church. He felt that a certain church met his beliefs, but go ahead. I'm lost. Okay. Are you suing individuals, whoever the defendants are, are you suing them in their individual capacity or their official capacity? My client had sued in both. I think we can only go through with the individual capacity at this point. Because he is out of prison, so all his defloratory relief and stuff, I would agree is moot. So we're talking about an individual claim against Mr. Sabina. Correct. And your assertion is this gentleman in what year was it? 2001. So the law was passed in 2000. He was supposed to know that it was clearly established somehow that your client was entitled to not have hair of a length within prison regulations because of your client's personal religious motivation. No, no, no. I should say, first of all, he's a reasonable person who works in the prison. So it's not that he's just walking around. He should know what the federal laws are related to prisons. I don't think that's a hard thing to say as the superintendent of a prison. And the statute, because it says it's the least restricted of alternative, the regulation here, there was absolutely no way for my client to get an exemption. Other people could get exemptions. If they had, if you were Orthodox Jew and you had bonged a synagogue and the rabbi sent a letter, you could have gotten exemption. You're talking about facts that I don't see in the brief. I think it's clear in the brief that he couldn't possibly get the exemption through the qualified immunity section. We'll have to look. But that's the whole problem with this 807 is he couldn't possibly get an exemption. I guess the prison discovered that that was true and so they have changed their statute. So that's why they can't argue that there's a case. And because that's all internal logic, I think it's reasonable for a person to understand that. And he certainly could have talked to his, he has counsel at his disposal to ask these kinds of questions too. But I think that's how you would find that the qualified immunity does not exist. So you're saying that these, whoever the defendants are, they are being not their official capacity. Right. Because I think those, those are mooted out. Yes. So we're talking about individual capacity and therefore we're talking about qualified immunity. And so all he's, so he's suing, you're claiming that he is suing the defendants in their individual capacities and seeking only monetary damage. Is that correct? Correct. Everything else was mooted. You could help me out. Where in the record for us by appendix page, I think, whatever it is, is the person. Okay. I just, it's, the last page is 33. So let me see where the first page is. Page 25. And it said, I think for the notice pleading and being it's pretty clear what he's suing about. It's not the most artful complaint, but it's clearly cognizant and the government clearly understood what the defendants were being sued upon. We'll hear from your opposing counsel about whether that was clear or not, but I understand your position. Okay. Let me, I'm still trying to figure, I haven't got the excuse me if I'm stuck at home plate. You are suing the current director of corrections, correct? Yes. That, yes. And then you said Sabina. Yes. He, did you bring a RLUIPA claim against Sabina? I would argue that the complaint does, yes. Where? Because it looks to us like it's just a due process claim against Sabina, not a RLUIPA claim. Well, I would agree, I would argue that the pro se complaint gives all the defendants notice that they're being sued under RLUIPA. You have to read the whole thing together. Take a look at it. When you get back on rebuttal, point out to us where you think it is. Sure. Thank you, Your Honor. All right. Good luck. Take your time. Thank you, Your Honor. May it please the court, my name is Bart DeLow and I'm with the Pennsylvania Attorney General's Office and I'm here on behalf of the appellees and let me start, Judge Ambrose, where you left off. I'm not even sure I'm at home plate anymore. I might be in the dugout. Okay. Well, let me start with APP30 where the claims are made against former Superintendent Sabina. And let me say that even under a liberal latitude for pro se pleadings, it's pretty clear that, as you suggested, these are due process claims. And in fact, that is what the district court determined today. And let me also point out to you that when the plaintiff wanted to try and assert a claim for violation of religious rights, he did so at page 31 with respect to Beard and Horn. So it wasn't that he wasn't capable of verbalizing what he was trying to do. And it's very clear that with respect to Sabina, what he was complaining about was a denial of an agreement, nothing having to do with restrictions on religion. So we would respectfully suggest that you're entirely correct in your suggestion that the claim that was remaining with respect to Sabina is due process, not RLUIPA. And so that gets to the first question that was asked, which is what's left. And we would, again, respectfully suggest nothing. There's nothing left of this case, because the only RLUIPA claims were made against Secretary Beard in his official capacity. And as I heard my learned opponent, she doesn't suggest and didn't suggest in her response to this court's letter inquiries that there was any claim to be made under official capacity. Let me also go to the second point that the court was speaking to with my opponent, which is qualified immunity. So you're saying that you believe that the only claim left is a claim against Beard under RLUIPA in his official capacity? That's right, John. Not in his individual capacity? No. He was never, he was never, there were no claims asserted against him in his individual capacity. There was a claim asserted against former Secretary Horn, but as the court pointed out, as we pointed out in our brief, and as again my learned opponent conceded, he's out of the case. And so that leaves you with a claim that isn't a RLUIPA claim. And frankly, that's all that was pursued on appeal. And as this court recognized, and so the ones who raised the question, we would suggest there's literally nothing left of this case. But in the alternative, let me just address the qualified immunity issues that the court also raised. And I, like my learned opponent, am not aware of any authority that suggests. If you sue an official in his official capacity and seek damages, is the defense one of qualified immunity or is it one of, that the government hasn't agreed in enacting the statute to allow sovereign immunity to be breached? I think it's both, your honor. I think if you, if you want to talk about official capacity, as we, as we said in our, in our letter brief, with respect to any sort of waiver of 11th Amendment, it must be unequivocally expressed in the statutory text. And we cited the Escondero, and I would also cite the Lane v. Pena. And the statute must unambiguously allow for monetary damages. And we would respectfully suggest that RLUIPA does neither of those things. It would seem that qualified immunity would apply only to claims or causes of action against officials in their individual capacity, and they would put up qualified immunity as a defense. But if you're suing them in their official capacity, wouldn't it be sovereign immunity that would be the defense? Well, your honor, I'm not, I'm not aware that they're, they're mutually exclusive. I think that even if you're acting for the sovereign in your official capacity, you have to, what they talk about is notice to the officials, clear notice of clearly established standards. So I'm, I'm respectfully not aware of authority that says you can't argue even as a, even as a government official that you were not put on proper notice. So I don't think they're mutually exclusive, but I think here we have both. Are there cases that say that qualified immunity applies to officials sued in their official capacity? Yeah, your honor, I'm not, I can't say yes or no. I have none ready, ready at the hand to give to but I think that the, the whole idea of qualified immunity is that you have to, in whatever capacity, you have to be well aware by clearly established standards that what you are specifically doing is incorrect. And I would respectfully, again, disagree with my learned opponent that suggests that there's some inconsistency between qualified immunity and reluctant. All you need is the clearly established standards. Now, Ms. Goldstein claims that both in the complaint and in the brief that the, at least Beard, I guess Sabina as to the due process claim, are being sued in their individual capacity. And you disagree with that? Yes, your honor. Well, because the complaint doesn't say that. It says that Beard is sued in his official capacity and what page of the complaint? Yeah, I'm looking for it. I think it's appendix 26 and 31. 27 paragraph 5, defendant Jeffrey A. Beard is the current secretary of corrections for the PDOC. He is sued in his official capacity. Yes, your honor. That's correct. And, and, and again, with respect to RLUFA, as we said in our 28J letter, this court has only last month discussed the substantial burden standard. And we would respectfully, and in that opinion, by the way, this court said that Supreme Court precedent on substantial burden is itself inconsistent. But can a statute rather than a case be the conveyor of information that affects qualified immunity? I think it needs to be clearly established somehow, your honor. And I would respectfully suggest that one of the things that courts like this one does is to construe statutory language. That's the process. You enact a statute and then the courts say, at least with respect to our what it means. And with respect to substantial burden, that court, this court said that last month. They also said that because there's inconsistency in how the Supreme Court precedent has been applied, the way it's been applied varies from, from different courts of appeals to different courts of appeals. And again, quoting this court's decision last month in Washington, they said in their attempt to harmonize, they came up with this two part test. And we would suggest and they also said it's an open question as to whether or not these different definitions have meaningful differences in application. Well, if it's an open question for a panel of this court last month, it's certainly an open question for prison officials six years ago. Do you think our understanding surpasses that of the average prison guard? Yes, Your Honor, I certainly do. And I think that, and you didn't expect me to give any other kind of answer, did you? I hope not. At least on the record. But so, so there's the point, Your Honor. These, these officials couldn't possibly have known what was, what may still be, but was certainly an open question for this court. And as we cited repeatedly in our brief, Harlow, Saucier, this court's decisions all say the same thing about clearly established standards at the time. Your Honor, I don't think there's anything else I need to say. I think we win because, as you pointed out in the beginning, there's nothing left of this case. But even if there was, we certainly didn't have notice of clearly established standards when these actions occurred. And we would respectfully suggest that this court affirm the district court on that basis. Thank you. Wait a second. Yes, please. First thing I'd like to point out is Mr. Subino was not a prison guard. I'm sure that you would learn more in law than he does. But he's the superintendent of the prison. Okay, so he's somebody who can get a lawyer on the phone. He's somebody who's obviously a bright person. They put in charge of this. So he's sued in his individual capacity, but he's sued under, for due process? Well, I would say that you have to be liberal with the pro se complaint. And then there's enough there to say that he was sued under RUPLA or let us amend our complaint. When you say there's enough there, I think I've found everything that talks about Mr. Subino's complaint partly with your help. And it's contained in a section called the denial of substantive due process. And it goes on subsequently to ask about the relief and the relief requested against Subino is to enjoin him from transferring the defendant. Obviously, that's rude. And to quote, award compensatory damages against defendant Subino for emotional injury resulting from his depriving the plaintiff of his right to due process. Now, there might be something else in there. I don't know. He does ask for all other available relief. And then I think you have put the sentences in there that he had about defendant Subino. I don't think in notice pleasing, you need necessarily counts and things like that. And here we have a pro se. Don't you have to give some notice? I mean, other than even a pro se complaint, you have to do that? The complaint clearly explains that the statute and the denial of both his hair exemptions violated RUFLA. And I think you're right that there's no sentence with Subino and RUFLA. This complaint is actually pretty dang good. Yeah. Well, but don't punish him for that. You know, you're right. He did make some better sentences about other people. But he did this himself. And I think it's clear enough. The government has defended against it. It's clear enough for us. This is summary judgment. We could amend our complaint if they would like to make it clearer. They could have asked on 12B. Well, here's the problem when you say we could amend our complaint. It doesn't look like this was candidly. It doesn't look like, ooh, he really meant to sue Mr. Subino. It looks like for RUFLA. It looks like this is a fellow who's smart and did just what he intended to do. He sued who he meant to sue on RUFLA. And he sued who he meant to sue on due process. He made the claims he wanted to make. And he made the claims he wanted to do. And to read it the way you're suggesting that we read it or to allow you to amend is really to say, you know, now that it's been pointed out that there's nothing left, Mr. Scott should get a mulligan. I'm not sure how I get there under the law. Well, as I said, I think the liberal pleadings, the pro se, he has enough in there that he has a RUFLA and he has Mr. Subino that you have to decide whether that's enough or not. Thank you very much. Thank you to both counselors. Take the matter under advisement. Next case we'll call is Hu versus Attorney General, number 06-3499.